```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JACQUELYN TODARO and MARIA H.
MOSCARELLI,

                Plaintiffs,              MEMORANDUM & ORDER
                                         04-CV-2939 (JS)(WDW)
        -against-

SIEGEL FENCHEL & PEDDY, P.C.,
WILLIAM D. SIEGEL, SAUL R. FENCHEL,
TRACIE P. PEDDY, ANDREW G. CANGEMI,
and EDWARD C. MOHLENHOFF,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiffs        Steven Ian Locke, Esq.
                      Jeffrey I. Schulman, Esq.
                      Carabba Locke LLP
                      100 William Street, 3rd Floor
                      New York, NY 10006

For Defendants        Philip D. Nykamp, Esq.
                      Twomey, Latham, Shea, & Kelly, LLP
                      33 West 2nd Street
                      P.O. Box 9398
                      Riverhead, NY 11901
```

SEYBERT, District Judge:

On July 14, 2004, Plaintiffs Jacquelyn Todaro ("Todaro") and Maria Moscarelli ("Moscarelli") (collectively, the "Plaintiffs") commenced this action against Siegel Fenchel & Peddy, P.C. ("SFP"), William Siegel ("Siegel"), Saul Fenchel ("Fenchel"), Tracie Peddy ("Peddy"), Andrew Cangemi ("Cangemi"), and Edward Mohlenhoff ("Mohlenhoff") (collectively, the "Defendants"). Plaintiffs alleged various causes of action in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1994) ("Title VII") and New York Executive Law § 296

("NYHRL") as well as violation of the Equal Pay Act, 29 U.S.C. § 206(d) (the "Equal Pay Act") and New York State Labor Law § 194 ("Labor Law") and other state actions. Pursuant to this Court's Order, dated February 27, 2007 ("2007 Order"), Plaintiffs' remaining claims are sex and pregnancy discrimination in violation of Title VII and the NYHRL, and any derivative aiding and abetting discrimination claim, and violation of the Equal Pay Act and Labor Law. Presently pending is Defendants' motion for separate trials pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. For the reasons below, Defendants' motion is DENIED.

BACKGROUND

The Court assumes the parties' familiarity with the facts. To the extent the parties require a detailed recitation of the facts, they are referred to the 2007 Order. The following facts are relevant to the instant motion.

Plaintiffs Todaro and Moscarelli were both employed by SFP, in different capacities, during overlapping periods. Specifically, Todaro worked at SFP from 1996 until 2003, first as a law clerk and then as an associate tax certiorari attorney. (2007 Order at 2-3.) Moscarelli was hired by SFP as a legal assistant in 1987 and, eventually, became supervisor of the tax certiorari department at SFP, until 2003. (Id. at 4-5.)

While employed at SFP, Plaintiffs directly reported to different individuals since Todaro was an attorney and Moscarelli

2

was an administrative employee. They did, however, work in a small single-office law firm, with approximately 20 total employees. (Pls.' Opp'n Letter 3.) From 2000 to Moscarelli's termination in 2003, Moscarelli reported to Betty Wells ("Wells"), a supervisor at SFP. (2007 Order at 4-5.) There is also testimony that Peddy supervised Moscarelli as well as Wells and that Fenchel was involved in the decision not to give Mosacarelli a raise and to terminate her. (Id.; Pls.' Opp'n Letter, Exs. A, B & C.) Todaro generally reported to the partner with whom she was working. (Defs.' Letter Mot. 2.)

Plaintiffs had both been on maternity leave in 2003, the year in which they suffered adverse employment actions. (2007 Order at 4-5.) In January 2003, at a time when Todaro was pregnant, Defendants reduced her salary by 25 percent. (Id. at 3.) Despite the salary reduction, Todaro indicated to the partners of SFP and Wells that she planned to return to work "at the end of July/beginning of August." (Id. at 3-4.) On July 21, 2003, the day Todaro was scheduled to return from maternity leave, she hand delivered a letter of resignation to the SFP partners, claiming that she was unable to continue working at SFP because Defendants had "discriminated against [her] (and others) both on the basis of pregnancy and gender." (Id. at 4.)

Moscarelli began maternity leave in May 2003. (Id. at 5.) While Moscarelli was on maternity leave, Wells determined,

3

upon SFP's request, that the tax certiorari department could function effectively without her. (Id.) Moscarelli was terminated on August 22, 2003, which was within two weeks after returning from maternity leave. (Id. at 6.)

DISCUSSION

I. Rule 42(b)

Defendants move for separate trials contending that Plaintiffs' claims do not arise out of the same transaction or occurrence, their respective claims do not share common facts, potential settlement and judicial economy would best be served by separate trials and, most importantly, one trial will expose Defendants to substantial risk of prejudice. (Defs.' Letter Mot. 2-3.) Plaintiffs oppose this motion arguing that, among other things, their claims "depict an overarching policy of unlawful discrimination formulated and executed by the same individual Defendants as partners running the same law firm in a single office." (Pls.' Opp'n Letter 2.)

Rule 42(b) provides, in pertinent part, that "the Court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . ." Fed. R. Civ. P. 42(b). As Defendants correctly point, in deciding whether to order separate trials, this Court is guided by the factors enumerated by the Honorable Arthur D. Spatt in Morris v. Northrop Gruman

Corporation. 37 F. Supp. 2d 556 (E.D.N.Y. 1999). Although no one factor is dispositive, the Court considers

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

Id. at 580. Moreover, courts have broad discretion in deciding whether to grant separate trials. See Tardd v. Brookhaven Nat'l Lab., No. 04-CV-3262, 2007 U.S. Dist. LEXIS 34378, at *18 (E.D.N.Y. May 8, 2007) (citing Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999); New York v. Hendrickson Bros., Inc., 840 F.2d 1065 (2d Cir. 1988); Corporan v. City of Binghamton, No. 05-CV-1340, 2006 WL 2970495, at *2 n.2 (N.D.N.Y. Oct. 16, 2006); Jeanty v. County of Orange, 379 F. Supp. 2d 533, 549 (S.D.N.Y. 2005)); see also Cestone v. General Cigar Holdings, Inc., No. 00-CV-3686, 2002 U.S. Dist. LEXIS 4504, at *6 (S.D.N.Y. March 18, 2002).

    A.   Same Transaction Or Occurrence

In analyzing whether the claims arise out of the same transaction or occurrence, courts are guided by the use of such terms in Rule 13(a). For example, with respect to Rule 13(a), the Supreme Court has stated that "'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending

5

not so much upon the immediateness of their connection as upon their logical relationship." Moore v. New York Stock Exchange, 270 U.S. 593, 610, 46 S. Ct. 367, 70 L. Ed. 2d 750 (1926). Applying this standard to motions to sever trials, district courts in this Circuit generally "permit all logically related claims by or against different parties to be tried in a single proceeding." Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1421 (S.D.N.Y. 1989); see also Puricelli v. CNA Ins. Co., 185 F.R.D. 139, 142 (N.D.N.Y. 1999).

Todaro claims gender and pregnancy discrimination, including constructive discharge, in violation of Title VII and NYHRL based on the 25 percent reduction in her salary in January 2003 at a time when she was pregnant. In addition, Todaro contends that she, and other female associates working at SFP, were paid less than similarly situated male associates in violation of the Equal Pay Act and Labor Law. Moscarelli also claims gender and pregnancy discrimination in violation of Title VII and NYHRL based on the fact that she did not receive a raise in January 2003, when she was pregnant, and was ultimately terminated within two weeks of returning from maternity leave. Both Plaintiffs also claim that there is a policy of discrimination against females generally, and more specifically, pregnant employees, at SFP.

The Court finds that Plaintiffs' claims, similar to those in Fong v. Rego Park Nursing Home, Puricelli and Blessedel, are

6

logically related. Fong, 1996 U.S. Dist. LEXIS 22289; Puricelli, 185 F.R.D. 139, Blessedel, 708 F. Supp. 1408. In Fong, severance was denied in an employment discrimination case where the plaintiffs held different positions, and were terminated at different times and under different circumstance. 1996 WL 468660, at *3. The Fong court reasoned that all the plaintiffs alleged that they were subjected to intense scrutiny and strict punishment by the defendants, under similar circumstances, while people of other ethnic background and age were not treated that way. Id. In Puricelli, both plaintiffs "received poor or borderline performance evaluations, and the basis for those evaluations was the same" and both plaintiffs were demoted and replaced by younger employees. 185 F.R.D. at 142-43. In Blesedell, all the female plaintiffs alleged that they were paid less than male counterparts; complained of comments made to them by a single male employee and other male employees; were allegedly sexually harassed by at least one common actor; complained about harassment to a superior and obtained no response; and they all complained of sexually discriminatory actions by the same supervisor who placed them all on probation and decreased their performance ratings. 708 F. Supp. at 1421. Similarly, Todaro and Moscarelli contend that because they became pregnant and had children, SFP denied them pay increases or reduced their salary and terminated their employment. Such allegations sufficiently allege claims arising out of the same transaction or

7

occurrence.

B. <u>Common Questions Of Law, Witnesses And Documentary Evidence</u>

Clearly, Plaintiffs claims present multiple common questions of law. Both Plaintiffs allege discrimination in violation of Title VII and NYHRL, as well as aiding and abetting such violations, and violations of the Equal Pay Act and Labor Law. Although the Court does not have the benefit of the parties' proposed joint pre-trial order, based on its review of the facts necessary to decide the 2007 Order and this motion, it appears that there would be a considerable number of witnesses necessary to both Plaintiffs' claims. For example, Wells, Peddy and Fenchel were involved, to differing degrees, with supervising and decision-making responsibilities regarding both Plaintiffs. In addition, with respect to Plaintiffs' aiding and abetting claims, the remaining SFP partners would also be relevant witnesses. Furthermore, it appears that certain former female employees, namely Karen Strom, would be a common witness to both Plaintiffs. While Defendants concede a number of common witnesses, they argue that there is an equal, if not greater, number of witnesses who will only be offering testimony with respect to one of the Plaintiffs. In support of this argument, Defendants cite to Plaintiffs' Rule 26(a) disclosure. Such disclosure, however, is submitted at the early stages of litigation and does not take into account information learned during the course of discovery or this

Court's dismissal of several of the claims pursuant to the 2007 Order.

The Court does note that a large majority of the documentary evidence – performance evaluations and personnel files – will pertain to one Plaintiff or the other. Plaintiffs assert, however, that certain documentary evidence – employee handbook and documents relating to unequal pay – will apply to both Plaintiffs' claims. Moreover, this Court finds that separate documentary proof alone does not warrant separate trials, especially in view of the large number of common witnesses.

Unlike <u>Morris</u>, therefore, Plaintiffs in this case worked in a small single office and were supervised by at least one common person, Peddy, with at least one other common person, Fenchel, participating in decisions, which Plaintiffs claim adversely affected them. <u>Morris</u>, 37 F. Supp. 2d at 581. In addition, this case involves a law firm run, in varying degree, by five individual partners; <u>Morris</u> involved defendant Northrop Grumman Corporation, a large aerospace corporation with multiple offices. <u>Id.</u> at 561.

C. <u>Prejudice To Defendants</u>

Finally, Defendants argue that one trial presents a substantial risk that evidence admissible for one of the Plaintiff's claims will unfairly prejudice the jury with respect to the other Plaintiff's claims. Additionally, Defendants assert that there is a great likelihood of juror confusion if the claims are

9

tried together.  The Court disagrees.

In support of Defendants' final argument, they cite to Cestone.  2002 U.S. Dist. LEXIS 4504.  In Cestone, the Court severed the claims of two plaintiffs where the plaintiffs "did not work at the same location or with the same people, they were employed in entirely different capacities, they did not know each other prior to meeting at their depositions and they did not know of each other's claims prior to a newspaper article describing Cestone's complaints."  Id. at *7-8.  In finding that the potential for unfair prejudice to the defendants also warranted severance, the court noted that "[p]laintiffs could not use evidence of each other's alleged claims in support of their own since hearsay or harassment of which they were unaware cannot support a hostile work environment claim."  Id. at *9.  Based on this reasoning, Defendants claim that certain discriminatory remarks Todaro plans to introduce to make out her claims could be improperly used by Moscarelli to support her claims.

First, unlike Cestone, Plaintiffs in this case worked together, albeit in different capacities, in a small office during, at least for approximately six years, the same time period.  There is no indication that they did not know one another or of one another's claims prior to bringing this action.  Second, there is a presumption that jurors will follow the Court's instructions. See Richardson v. Marsh, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L.

10

Ed. 2d 176 (1987). Many courts have found that a cautionary instruction is sufficient to prevent the risk of unfair prejudice or confusion. See Lewis v. Triborough Bridge & Tunnel Auth., 97-CV-607, 2000 U.S. Dist. LEXIS 4982, at *14 (S.D.N.Y. Apr. 19, 2000); Puricelli, 185 F.R.D. at 144. Lastly, it is not entirely clear to this Court that the evidence alluded to by Defendants would not be equally admissible with respect to both Plaintiffs. As discussed, there is no indication, as there was in Cestone, that Moscarelli was unaware of the discrimination alleged by Todaro. 2002 U.S. Dist. LEXIS 4504, at *9. Furthermore, as Plaintiffs note, "[a]s a general rule, the testimony of other employees about their treatment by the defendants is relevant to the issue of the employer's discriminatory intent." Zubulake v. UBS Warburg LLC, 382 F. Supp. 2d 536, 544 (S.D.N.Y. 2005). This rule of law holds true especially where, as here, "the type of discrimination directed at other employees . . . [is] similar in nature to that experienced by the [P]laintiff." Id. As the Court pointed out in its 2007 Order, Defendants' discriminatory intent, with respect to both Plaintiffs' claims, will be an issue at trial. (2007 Order at 18-20.)

CONCLUSION

For the foregoing reasons, Defendants' motion for separate trials is DENIED. The Parties are directed to immediately contact the Chambers of Magistrate Judge William D. Wall to continue preparing this case for trial.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York
March 3, 2008