UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
JACQUELYN TODARO and MARIA H.
MOSCARELLI,

           Plaintiffs,              <u>MEMORANDUM & ORDER</u>
                                    04-CV-2939 (JS)(WDW)
      -against-

SIEGEL FENCHEL & PEDDY, P.C.,
WILLIAM D. SIEGEL, SAUL R. FENCHEL,
TRACIE P. PEDDY, ANDREW G. CANGEMI,
and EDWARD C. MOHLENHOFF,

              Defendants.
------------------------------------X
APPEARANCES:
For Plaintiffs           Steven Ian Locke, Esq.
                        Jeffrey I. Schulman, Esq.
                        Carabba Locke LLP
                        100 William Street, 3rd Floor
                        New York, NY 10006

For Defendants           Philip D. Nykamp, Esq.
                        Kevin Fox, Esq.
                        Patrick Fife, Esq.
                        Twomey, Latham, Shea, & Kelly, LLP
                        33 West 2nd Street
                        P.O. Box 9398
                        Riverhead, NY 11901

SEYBERT, District Judge:

      On July 14, 2004, Plaintiffs Jacquelyn Todaro ("Todaro") and Maria Moscarelli ("Moscarelli") (collectively, the "Plaintiffs") commenced this action against Siegel Fenchel & Peddy, P.C. ("SFP"), William Siegel ("Siegel"), Saul Fenchel ("Fenchel"), Tracie Peddy ("Peddy"), Andrew Cangemi ("Cangemi"), and Edward Mohlenhoff ("Mohlenhoff") (collectively, the "Defendants"). Plaintiffs allege violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1994) ("Title

VII"), New York Executive Law § 296 ("NYHRL"), the Equal Pay Act, 29 U.S.C. § 206(d) (the "Equal Pay Act"), and New York State Labor Law § 194 ("Labor Law").  Jury selection is scheduled for Monday, August 11, 2008.  Presently pending are the following in limine motions made by Defendants:  (1) motion to dismiss and strike Plaintiff Todaro's constructive discharge claim; (2) motion to prevent evidence or testimony that Plaintiff Todaro is entitled to lost wages following her resignation from SFP; (3) motion to prevent the jury from calculating back pay and front pay; (4) motion to bifurcate the liability and damages portions of the trial; and (5) motion to bar testimony of Richard Wall, Ph.D. as an expert.  For the following reasons, Defendants' motions are GRANTED in part and DENIED in part.

BACKGROUND

The Court assumes the parties' familiarity with the facts of this case.  A detailed recitation of the facts are set forth in the Court's Order dated February 27, 2007 ("February 2007 Order"), in which the Court granted in part and denied in part Defendants' motion for summary judgment.  Specifically, the Court dismissed Plaintiffs' claims for hostile work environment, aiding and abetting the creation of hostile work environment, retaliation, and intentional infliction of emotional distress.  In addition, by Order dated May 3, 2008, the Court denied Defendants' motion for separate trials.

Generally, Plaintiff Todaro, who was an associate attorney at SFP, claims that her salary was reduced by 25% at the beginning of 2003 because of her gender and her pregnancy; that the individual Defendants, Siegel, Fenchel, Peddy, Cangemi, and Mohlenhoff, aided and abetted that discriminatory conduct; and that Defendants paid Todaro less than her male counterparts because of her gender and pregnancy. She also claims that she was subject to various discriminatory comments regarding her gender and pregnancy. Finally, Todaro claims that Defendants' conduct amounted to a constructive discharge, in other words, this conduct compelled her to resign.

Plaintiff Moscarelli claims that she was discharged from her employment on the basis of her gender and pregnancy status in 2003; that the individual Defendants, previously mentioned, aided and abetted that discriminatory conduct; and that the Defendants paid her less than her male counterparts because of her gender and pregnancy. She also claims that she was subject to discriminatory comments regarding her gender.

<u>DISCUSSION</u>

I.   <u>Motion To Dismiss Todaro's Constructive Discharge Claim</u>

Defendants' move pursuant to Rules 12(c) and 12(f) to dismiss and strike Todaro's constructive discharge claim. The crux of Defendants' argument is that, as a matter of law, Todaro cannot maintain a constructive discharge claim because her hostile work

environment claim was dismissed by the February 2007 Order.  As an initial matter, Todaro argues that the Court should not entertain Defendants' motion because it is untimely and, ostensibly, a second bite at the summary judgment apple.  As for the merits, Todaro argues that, despite the fact that her hostile work environment claim has been dismissed, she still has a constructive discharge claim based on the 25% reduction in her salary and other discriminatory conduct.  Cases in this Circuit clearly support Defendants' position.

A.   Timing Of Defendants' Motion

While the Court does not appreciate such motions being made so close to trial, Todaro's argument of untimeliness need not detain the Court for long.  First, Todaro correctly notes that Defendants' motion should be more properly considered under Rule 56 rather than Rule 12(c) or 12(f).  See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) ("A court may indeed convert a motion for judgment on the pleadings into a motion for summary judgment if 'matters outside the pleadings are presented to and not excluded by the court.'" (quoting Fed. R. Civ. P. 12(c)).  Defendants are relying in large part on the Court's February 2007 Order dismissing Todaro's hostile work environment claim.  Necessarily, therefore, Defendants are relying on evidence outside the pleadings, which is not proper in a Rule 12(c) motion.  "While a district court ordinarily must give notice to the parties before

4

converting" a Rule 12(c) motion into one for summary judgment, "'the central inquiry is whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of reasonable opportunity to meet facts outside the pleadings.'" Util. Metal Research, Inc. v. Coleman, No. 03-CV-1463, 2008 U.S. Dist. LEXIS 25095, at *9-10 (E.D.N.Y. March 28, 2008) (quoting Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999). Plaintiffs were neither taken by surprise nor deprived of responding to the current motion.   Indeed, Plaintiffs pointed out in their opposition that the motion was really one for summary judgment and, more importantly, the motion is primarily based on the decision concerning the prior summary judgment motion, to which Plaintiff completely and thoroughly responded.

Second, Defendants should have raised this argument in their first summary judgment motion.[1] Defendants contend, however, that they did not realize Todaro would continue to pursue the constructive discharge claim until they prepared the joint pre-

---

[1]   Defendants argue that because the constructive discharge claim was not set out as a separate cause of action in the Complaint, they did not explicitly address it in their summary judgment motion.   This argument is extremely weak.   Constructive discharge should not be pleaded as a separate cause of action; it is a form of discrimination.   To that end, Todaro made several allegations concerning her alleged constructive discharge within the discrimination causes of action (Compl. ¶¶ 14, 29, 48, 54.) Accordingly, Defendants were definitely on notice that Todaro was pursuing a constructive discharge claim as part of her discrimination causes of action.

5

trial order ("JPTO").   Finally, and most importantly, if the constructive discharge claim fails as a matter of law, for the sake of efficiency, preserving judicial resources, it should not be put to the jury.   As noted by one court in the context of a 12(f) motion to strike an affirmative defense on the eve of trial, although "such motions are not favored, [they] will succeed if it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense."   Fed. Deposit Ins. Co. v. Ornstein, 73 F. Supp. 2d 277, 279 (E.D.N.Y. 1999) (internal quotation marks and citations omitted).   Although the cases cited by Todaro support her timeliness argument, they note that it is within the Court's discretion to consider a successive summary judgment motion.   See United States Underwriters Ins. Co. v. Falcon Constr. Corp., 02-CV-4182, 2006 U.S. Dist. LEXIS 28310 (S.D.N.Y. May 10, 2006); Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552 (S.D.N.Y. 2004) (noting that the Court has discretion to consider successive summary judgment motions "seeking precisely the same relief as before," but declining to do so where the moving party has not raised any new facts or arguments that could not have been raised in the first motion and the case was far from final disposition).   Here, although Defendants could have made the argument for summary dismissal of Todaro's constructive discharge claim in its first motion for summary judgment, technically, they are relying on the

6

Court's February 2007 Order dismissing the hostile work environment claim – ostensibly new evidence – for support of this argument. Additionally, in this case, we are on the eve of trial, unlike Siemens, in which the motion was made far from final disposition. Consequently, the Court will consider the merits of the motion.

B.   Lack Of Hostile Work Environment Bars Constructive Discharge Claim

Defendants argue that because the Court previously determined in the February 2007 Order that Todaro failed to establish a hostile work environment (February 2007 Order 24), as a matter of law, Todaro's constructive discharge claim must be dismissed.   Todaro does not dispute that she cannot, based on the February 2007 Order, maintain a hostile environment constructive discharge claim.   Rather, Todaro argues that her constructive discharge claim can be based on her larger discrimination claim, including but not limited to, the 25% reduction in salary, for which she does not have to first establish a hostile work environment. In sum, Todaro contends that Defendants are utilizing the incorrect standard. In making their motion, Defendants rely on the many Eastern and Southern District Court cases, which say that, as a matter of law, a constructive discharge claim cannot stand if the plaintiff is unable to first establish a hostile work environment, i.e., that a constructive discharge claim is an aggravated hostile work environment claim.   See, e.g., Nakis v. Potter, 422 F. Supp. 2d 398, 412 (S.D.N.Y. 2006).

To establish discrimination in violation of Title VII in the form of constructive discharge, a plaintiff must prove (1) she is a member of a protected class, (2) she is qualified to hold the position in question, (3) she was constructively discharged, (4) under circumstances giving rise to an inference of discrimination. See id. at 413.  A plaintiff demonstrates that she has been constructively discharged by showing that "'[her] employer rather than discharging [her] directly, intentionally creates a work atmosphere so intolerable that [she] is forced to quit involuntarily.'" Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003)).  In analyzing a constructive discharge claim, courts generally focus on two elements: "the employer's intentional conduct and the intolerable level of the work conditions." Petrosino, 385 F.3d at 229.

Courts have found that the intent requirement is satisfied if plaintiff can provide evidence of specific intent, if available, or that the "employer's actions were 'deliberate' and not merely 'negligent or ineffective[].'" Id. at 230 (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)); see also Kirsch v. Fleet St. Ltd., 148 F.3d 149, 161-62 (2d Cir. 1998) (upholding jury finding of constructive discharge where evidence indicated that employer nodded affirmatively when plaintiff suggested that the company was trying to force her to

8

leave). As for the intolerable level of the conduct, this element is "assessed objectively by reference to a reasonable person in the employee's position." Petrosino, 385 F.3d at 230; see also Pennsylvania State Police v. Suders, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004) ("The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"); Terry, 336 F.3d at 152 ("Working conditions are intolerable when, viewed as a whole, they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.") (internal quotation marks and citations omitted). This standard is extremely difficult to satisfy.

In 2004, in the context of a hostile environment constructive discharge claim, the Supreme Court further honed this clearly-defined standard. Suders, 542 U.S. 129. The Supreme Court took care to point out that the constructive discharge claim at issue in Suders "stem[med] from, and can be regarded as an aggravated case of, sexual harassment or hostile work environment." Id. at 146. The Court further explained that Suders' claim "presents a 'worse case' harassment scenario, harassment ratcheted up to the breaking point." Id. at 147. Accordingly, the Supreme Court announced that when a plaintiff advances a "hostile-environment constructive discharge" claim, he must show more than just a hostile work environment; he must also "show working

9

conditions so intolerable that a reasonable person would have felt compelled to resign." Id.

While the Supreme Court noted several times throughout its opinion that the constructive discharge claim at issue in Suders arose out of a hostile work environment claim, id. at 143 ("This case concerns an employer's liability for one subset of Title VII constructive discharge: constructive discharge resulting from sexual harassment, or "hostile work environment," attributable to a supervisor."), district courts in this Circuit have seized upon the standard set forth in Suders and applied it in all types of constructive discharge claims, regardless of whether they resulted from a hostile work environment. See O'Neal v. State Univ. of New York, No. 01-CV-7802, 2006 U.S. Dist. LEXIS 81654, at *37 (E.D.N.Y. Nov. 7, 2006) (dismissing a discrimination constructive discharge claim because plaintiff was unable to show a hostile work environment); Nakis, 422 F. Supp. 2d at 412 ("after Suders without an actionable hostile environment claims, [a] plaintiff's constructive discharge claim must also fail") (internal quotation marks omitted); Ferraro v. Kellwood Co., No. 03-CV-8492, 2004 U.S. Dist. LEXIS 23482, at *37-38 (S.D.N.Y. Nov. 18, 2004) ("Without an actionable hostile environment claim, [a] plaintiff's constructive discharge claim must also fail."). Even without expressly stating so, the Second Circuit has implicitly employed the same reasoning in a post-Suder case. See Petrosino, 385 F.3d

10

at 230 (analyzing the constructive discharge claim by first reviewing the hostile work environment claim and finding that the few additional allegations were insufficient to "'ratchet[ ]' the harassment up to the 'breaking point'").

Most telling is Ferraro, which included an independent adverse action, which could have supported a constructive discharge claim absent a hostile work environment, but in which the court nonetheless stated that "[w]ithout an actionable hostile environment claim, [a] plaintiff's constructive discharge claim must also fail." 2004 U.S. Dist. LEXIS 23482, at *37-38. The only post-Suders district court case cited by Todaro that does not state that a constructive discharge claim cannot be maintained absent a hostile work environment is Hnot v. Wills Group Holdings, Ltd., No. 01-CV-6558, 2005 U.S. Dist. LEXIS (S.D.N.Y. Apr. 5, 2005). The court in Hnot briefly entertained plaintiff's constructive discharge claim based on allegations of a demotion, reduced responsibilities, which would affect her book of business and thus bonus, and tension with a supervisor. Id. at *17-18. Ultimately, however, the court granted defendant summary judgment because plaintiff provided no evidence that the alleged actions were taken as a result of plaintiff's gender and, therefore, she could not establish the fourth prong of a discrimination claim – inference of discrimination. Id. at *19. Importantly, no where in the opinion does the court cite to Suders or Petrosino, although it was decided

11

after both cases were issued.  This omission is glaring considering Suders and Petrosino are leading Supreme Court and Second Circuit, respectively, cases on constructive discharge claims.

In sum, based on Suders and its progeny, Defendants' motion to dismiss Todaro's constructive discharge claim is GRANTED.

C.   Prima Facie Constructive Discharge Claim

Additionally, Todaro's allegations of discrimination, including the 25% reduction in salary, do not establish a prima facie case of constructive discharge.  As noted above, there are two elements of a constructive discharge claim: (1) employer's intentional conduct and (2) intolerable level of the work conditions.  See Petrosino, 385 F.3d at 229.  Very few courts, when presented with a constructive discharge claim, find that the plaintiff has sufficiently stated the claim.  In cases where the constructive discharge claim is permitted, the facts are extremely egregious.  See Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 85-89 (2d Cir. 1996) (finding actionable conduct where plaintiff's supervisors "called [plaintiff] into an office with closed doors and berated and yelled at [her] for hours," placed her on formal probation, and threatened that "she would be fired immediately if . . . she did not maintain satisfactory performance levels, demonstrate satisfactory behavior, and improve her listening skills"); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987) (finding triable constructive discharge claim where

12

plaintiff was told "he would be fired at the end of a 90-day probationary period no matter what he did to improve his alleged deficient performance"); Morris v. New York City Dep't of Sanitation, No. 99-CV-4376, 2003 U.S. Dist. LEXIS 5146, 2003 WL 1739009, at *5 (S.D.N.Y. Apr. 2, 2003) (finding triable constructive discharge claim where plaintiff was told "that if he did not retire, he would be demoted down two levels resulting in a salary reduction of approximately $25,000 and attendant dilution of future pension benefits"); see also Petrosino, 385 F.3d at 231 (listing cases that refused to recognize constructive discharge claim where, among other things, plaintiff was dissatisfied with work assignments, failed to receive an anticipated raise, failed to receive a bonus, dissatisfied with reduced promotion opportunities, received an unwanted transfer, relieved of coaching responsibilities and transferred); Spence v. Maryland Cas. Co., 995 F.2d 1147, 1149-52 (2d Cir. 1993) (finding no constructive discharge claim despite ridicule, threats of termination, constant harassment, and improper discipline); Nakis, 422 F. Supp. 2d at 415 (holding, in the alternative, that plaintiff's allegations did not sufficiently meet the prima facie elements of a constructive discharge claim where plaintiff's desk was relocated and she did not receive meaningful work assignments); Katz v. Beth Israel Med. Ctr., No. 95-CV-7183, 2001 U.S. Dist. LEXIS 29, 2001 WL 11064 at *12 (S.D.N.Y. Jan. 4, 2001) (finding no constructive discharge

13

where a plaintiff alleged that she was told to retire, unfairly disciplined, and threatened with termination). Cf. Kirsch, 148 F.3d at 161-62 (upholding, in a pre-Suders case, jury's finding of constructive discharge where supervisor affirmatively nodded that the company was trying to force plaintiff to leave and plaintiff's salary was reduced from $60,000 plus commissions to $26,000 without commissions).

First, Todaro has not provided evidence that SFP intended to prompt her resignation. Todaro argues that the February 2007 Order holds directly opposite; namely, that the February 2007 Order found there was sufficient evidence of discriminatory animus to sustain Todaro's discrimination claim for trial. While Todaro is correct in her characterization of the February 2007 Order's holding, she appears to conflate the third and fourth elements of a discrimination claim. The February 2007 Order supports the fourth element of Todaro's discrimination claim: "that the discharge occurred under circumstances giving rise to an inference of discrimination. Nakis, 422 F. Supp. 2d at 413. The third element, however, requires that Todaro show that she was actually or constructively discharged. Id. In order for Todaro to establish that she was constructively discharged, she must show that Defendants "acted with the specific intent to prompt [her] resignation" or "at least demonstrate that the employer's actions were deliberate and not merely negligent or ineffective."

14

Petrosino, 385 F.3d at 229-30. The February 2007 Order does not address this element, or the facts supporting this element, at all. Nor does Todaro point to evidence that would show that SFP intended, or at least acted deliberately with respect to, Todaro's resignation.

Second, the conduct of which Todaro complains is not as egregious as conduct alleged in other cases in which courts refused to find "intolerable conditions." More specifically, Todaro cites the following discriminatory conduct in support of her constructive discharge claim: discriminatory comments, harder assignments, fewer business development opportunities, and less mentoring as well as being paid less than male counterparts and, ultimately, having her salary reduced by 25%. Such conduct, even taken as a whole, is insufficient to establish intolerable working conditions. That is, based on the cases discussed herein, such conduct does not create a situation in which "a reasonable person in the [Todaro's] shoes would have felt compelled to resign." Terry, 336 F.3d at 152. The closest call is the 25% pay cut, but that, without the requisite intent, is not enough. See Butts v. New York City Dep't of Hous. Pres. and Dev., No. 00-CV-6307, 2007 U.S. Dist. LEXIS 6534, at *72 (S.D.N.Y. Jan. 29, 2007) ("A single reduction in pay, without additional evidence of malicious intent, is insufficient to establish a claim of constructive discharge.").

As an aside, Defendants argue in their reply memorandum

15

that Todaro's constructive discharge claim also fails because she continued her employment with SFP for six months after her salary was reduced. Todaro seeks to file a sur-reply to this argument, which is DENIED as unnecessary. While Defendants are correct that generally, "[a]n employee who remains on the job while looking for alternative employment is hard-pressed to establish that her working conditions were intolerable," Regis v. Metro. Jewish Geriatric Ctr., No. 97-CV-0906, 2000 U.S. Dist. LEXIS 2215, 2000 WL 264336, at *12 (E.D.N.Y. Jan. 11, 2000), the circumstances were a bit different here and the argument is not necessary to the Court's determination. See Baptiste v. Chushman & Wakefield, No. 03-CV-2101, 2007 U.S. Dist. LEXIS 19784, at *35-36 (S.D.N.Y. Mar. 7, 2007) ("No reasonable jury could conclude that Plaintiff's working conditions were so intolerable that she was forced to resign when she began looking for work months before resigning and then waited nearly two weeks after she had accepted new employment to formally tender her resignation. It cannot be said that Plaintiff was forced involuntarily to resign when the undisputed facts demonstrate she chose the date and time to do so.").

Here, however, Todaro went out on maternity leave on April 27th and remained out until her resignation in July. Although she remained an employee of SFP for six months after her salary reduction, she was in the workplace for less than four months after the reduction. Additionally, and more importantly,

16

Todaro testified that she was the breadwinner in her family and her medical benefits, which she needed to cover the birth and care of her child, were provided through her employment with SFP. (Todaro Dep. 183.)  Such circumstances are entirely different from employees who choose to shop around for a new job while remaining in the alleged "intolerable conditions."  That being said, the Court need not rely on this line of cases in reaching its determination that Todaro's constructive discharge claim fails and, therefore, a sur-reply is unnecessary.

II.  Motion To Preclude Evidence Related To Lost Wages

Defendants next argue that because Todaro is unable to maintain a constructive discharge claim, she should be barred from presenting any evidence or argument at trial that she entitled to an award of front pay or back pay following her voluntary resignation on July 21, 2003.  In Todaro's opposition, she focuses on her ability to bring the constructive discharge claim, but does not address this argument.

Although the Second Circuit has not yet ruled on this issue, other circuits as well as district courts in this Circuit, have held that front pay and back pay are not available as damages to plaintiffs who cannot establish that they were constructively discharged.  See Brady v. Wal-Mart Stores, Inc., No. 04-CV-3843, 2005 U.S. Dist. LEXIS 12151, at *16-18 (E.D.N.Y. June 21, 2005) (denying awards of back pay and front pay where plaintiff was

17

unable to establish he was constructively discharged); Tse v. UBS
Fin. Servs., No. 03-CV-6234, 2008 U.S. Dist. LEXIS 11915, at *56
(S.D.N.Y. Feb. 19, 2008) ("The prevailing view of the appellate
courts that have addressed the issue is that 'in order for an
employee to recover back pay for lost wages beyond the date of his
[employment], the evidence must establish that the employer
constructively discharged the employee.'" (quoting Jurgens v. EEOC,
903 F.2d 386, 389 (5th Cir. 1990) (alteration in original)). "This
constructive discharge rule[, as it is called,] provides incentive
both for the employee, who should assail the discrimination while
remaining employed, and for the employer, who should have an
opportunity to remedy the discrimination." Brady, 2005 U.S. Dist.
LEXIS 12151, at *16. As the Court has found that, as a matter of
law, Todaro's constructive discharge claim cannot stand,
Defendants' motion is GRANTED, and Todaro is precluded from
offering evidence or arguing for an award of front pay or back pay
following her resignation on July 21, 2003.

III. Motion To Prevent Jury From Calculating Back And Front Pay

        Defendants' next motion is to prevent the jury from
calculating lost wages damages in the form of back pay and front
pay. In sum, Defendants contend that because lost wages in the
form of back pay or front pay are considered an equitable remedy
under Second Circuit case law, Plaintiffs are not entitled to a
jury determination on this question. While Defendants are correct,

and Plaintiff do not dispute, that, in the Second Circuit, back pay and front pay are equitable remedies; such is not the case under the law of the State of New York. Because back pay and front pay are legal remedies under New York State law, Defendants move, in the alternative, to have such damages submitted to the jury solely on an advisory basis. The case law does not support Defendants' requests.

As noted, under Title VII, both front and back pay are equitable remedies to be decided by the Court. See Hine v. Mineta, 238 F. Supp. 2d 497, 498 (E.D.N.Y. 2003) ("A court determines the issue of back pay under Title VII because it is an equitable remedy."); Thomas v. iStar Fin., Inc., 508 F. Supp. 2d 252, 258 (S.D.N.Y. 2007) ("Under Title VII, front pay is unquestionably an equitable remedy to be decided by the Court."); see also Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001). As clear as the federal law is on this issue; so to is the state law: "under state human rights law, unlike Title VII, front pay [and back pay] is a legal remedy to be decided by the jury." Thomas, 508 F. Supp. 2d at 258; see also Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1189 (2d Cir. 1992) ("all money damage awards under New York's Human Rights Law are legal remedies"); Shannon v. Fireman's Fund Ins. Co., 136 F. Supp. 2d 225, 228 n.2 (S.D.N.Y. 2003) ("federal courts applying New York law have found that the question as to whether a plaintiff is entitled to an award of back

19

or front pay should generally be decided by a jury").

First, Defendants, citing only to federal law, request that the jury not be permitted to calculate back and front pay. While this course would be acceptable if this case involved only federal claims, this case contains claims under both Title VII and NYHRL. Second, and in the alternative, Defendants urge the Court to submit the issue to the jury solely for an advisory verdict. Where there are state law discrimination claims, however, there is no case law that permits taking the issue away from the jury at the outset or submitting the NYHRL damages issue to the jury solely for an advisory opinion.

Defendants' attempt to rely on <u>Tyler</u> for support is unpersuasive. <u>Tyler</u> is a 1992 Second Circuit case, which does not even decide the issue of whether a NYHRL claim should be put to the jury for an advisory verdict. In fact, the court stated "[a]lthough we have noted, <u>supra</u>, that money damages under the Human Rights Law are a legal remedy, we need not reach this issue since . . . it is clear that the alleged error, if any, 'does not affect the substantial rights of the parties,' Fed. R. Civ. P. 61, and would be harmless." <u>Tyler</u>, 958 F.2d at 1190.

Defendants' reliance on language in a 1997 Northern District case is equally unavailing. <u>See</u> <u>Tanzini v. Marine Midland Bank, N.A.</u>, 978 F. Supp. 70 (N.D.N.Y. 1997). In <u>Tanzini</u>, the court explained that "[b]ecause the parties initially disagreed whether

the issue of front pay in this case was an equitable remedy to be determined by the Court, the issue was submitted to the jury with the caution to the parties that any front pay award may be taken as advisory only." Id. at 80. Defendants' neglect to mention, however, that in upholding the jury's award of front pay, the court went on to state that "the parties now agree, as does the Court, that while an award of front pay is an equitable remedy for the Court under the ADEA, . . . such damages are a legal remedy properly determinable by the jury under the HRL." Id.

Defendants point to no case that advocates, under the NYHRL, taking the damages issue from the jury at the outset. If the jury finds liability under the NYHRL and comes in with an excessive award, the proper course would be to make post-trial motions to reduce the award. In discounting this method, Defendants argue that it would be more efficient to simply take the issue from the jury at the outset. Our legal system does not proceed in such a manner. Simply because there is the potential for the jury to award in excess, does not justify taking a legal remedy from them without absolutely no case law in support of such action. Under the NYHRL, the jury is to calculate front and back pay.

There is case law, however, that supports, as Plaintiffs have suggested, putting the Title VII damages issue to the jury for an advisory opinion. See Hine, 238 F. Supp. 2d at 498 (allowing

21

the issue of back pay to be decided in the first instance by the
jury pursuant to Rule 39 as an advisory verdict); Cook v. Hatch
Assoc., 02-CV-065A, 2006 U.S. Dist. LEXIS 64646 (N.D.N.Y. Sept. 11,
2006) (noting in a Title VII case, "the Court retains authority to
submit the issue of lost wages to the jury for an advisory verdict
if it deems such action appropriate").  The issue of economic
damages in the form of front pay and back pay will be given to the
jury for its determination with respect to the NYHRL claim and will
be in the form of an advisory verdict pursuant to Federal Rule of
Civil Procedure 39 with respect to the Title VII claim.
Accordingly, Defendants' motion to prevent the jury from
calculating front pay and back pay be DENIED.

IV.  Motion To Bifurcate Trial

       Defendants also move the Court to bifurcate the issues of
liability and damages pursuant to Federal Rule of Civil Procedure
42(b).  The decision whether to bifurcate a trial into liability
and damages phases is a matter within the sound discretion of the
trial court.  Johnson v. Celotex Corp., 899 F.2d 1281, 1289 (2d
Cir. 1990); Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d
10, 15 (2d Cir. 1988).  Specifically, Rule 42(b) of the Federal
Rules of Civil Procedure provides:

> The Court, in furtherance of convenience or to
> avoid prejudice, or when separate trials will
> be conducive to expedition and economy, may
> order a separate trial of any claim, cross-
> claim, counter-claim or third-party claim, or
> of any separate issue or of any number of

22

> claims, cross-claims, counter-claims or third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Thus, in deciding whether or not to bifurcate, the Court must assess "the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." Aldous v. Honda Motor Co., No. 94-CV-1090, 1996 U.S. Dist. LEXIS 7855, at *2 (N.D.N.Y. May 30, 1996). To do this, the Court also should consider whether bifurcation would lead to duplicity of witness testimony or evidence. Moreover, the party seeking bifurcation has the burden of demonstrating that bifurcation is appropriate. See id. at *2.

Defendants' main argument in support of bifurcation is based on its motion to prevent the jury from calculating lost wages. Defendants' other arguments in support of bifurcation are (1) Plaintiffs' damages claims will focus on post-SFP employment experience, which facts are not relevant to Defendants' liability and (2) bifurcation would improve judicial economy because if Plaintiffs are unsuccessful at proving liability, evidence as to damages will be unnecessary. Defendants fail to meet their burden of demonstrating that bifurcation is appropriate.

Plaintiffs' contend that much of the evidence to be presented at trial is relevant to both liability and damages. For example, Plaintiffs intend to introduce evidence that other female

23

SFP employees (who are not party to the case) also suffered from pregnancy and gender discrimination and that male employees were paid more than female employees for the same work. According to Plaintiffs, the evidence in support of these allegations is relevant to liability because it supports a finding of discriminatory intent and to damages because it establishes the severity of the discrimination.

Defendants have failed to present a compelling reason to bifurcate liability and damages. While Defendants make the conclusory statement that much of the evidence as to liability is irrelevant to damages, they point to no specific examples. On the other hand, Plaintiffs provide a number of examples to show that evidence going to liability and damages is intertwined. See Vichare v. AMBAC Inc., 106 F.3d 457, 466-67 (2d Cir. 1996) (affirming denial of bifurcated trial where, among other things, "the issues of liability and damages are intertwined"). Additionally, the parties estimate that a combined liability and damages trial will last seven days. There is no indication that a trail separated into liability and damages phases will be significantly shorter than a combined trial, especially in light of the overlapping evidence. Accordingly, Defendants' motion to bifurcate is DENIED.


V.    Motion To Preclude Testimony Of Dr. Wall As Expert


24

Defendants move pursuant to Federal Rule of Civil Procedure 37(c) to preclude the testimony of Richard Wall, Ph.D. Plaintiffs indicated in the JPTO that they expect to call Dr. Wall to testify as to Todaro's emotional distress damages. Defendants contend that because the JPTO was the first time Plaintiffs indicated they would be calling Dr. Wall and because no written report was ever provided, as required by Federal Rule of Civil Procedure 26(a)(2), Dr. Wall should be precluded from testifying. Plaintiffs oppose this motion arguing that because Dr. Wall was Todaro's treating physician, the disclosure requirements of Rule 26(a)(2) do not apply. While Defendants do not dispute the "treating physician" exception to Rule 26(a)(2), and do not oppose Dr. Wall testifying as to Todaro's care and treatment, they urge the Court to preclude Dr. Wall from providing an expert opinion as to Todaro's damages.

Federal Rule of Civil Procedure 26(a)(2) provides that parties must disclose the identity of expert witnesses and that such disclosure "must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2). The Advisory Committee Notes explains that this requirement does not apply to treating physicians. See id. advisory committee's notes 1993 Amendments. "Thus, a treating physician may testify about opinions formed during the course of treatment without regard to the

25

disclosure requirements of Rule 26(a)(2) . . . . However, with regard to opinions based on information not learned during the course of treatment, a physician must comply with the rules regarding expert disclosure." Lewis v. Triborough Bridge and Tunnel Auth., No. 97-CV-607, 2001 U.S. Dist. LEXIS 64, at *4 (S.D.N.Y. Jan. 8, 2001). Accordingly, courts faced with similar situations generally held that a treating physician can testify as a fact witness without complying with Rule 26(a)(2); that is, treating physicians can testify as to observations made and opinions formed during the course of treatment. See Smith v. Crown Lift Trucks, 2007 U.S. Dist. LEXIS 36671, at *13 (S.D.N.Y. May 16, 2007). Courts need to be cautious, however, as to whether the treating physician's testimony is too speculative (and more like an expert's opinion) or more firmly a prognosis and course of treatment. See id. at *13-14 ("There is a significant difference between noting that an injury will not heal itself -- something treating physicians tell patients every day -- and attempting to quantify or otherwise describe the amount of pain a patient will suffer at some specific point in the distant future, as an expert witness might be retained to do. In any event, treating physicians may 'have an opinion as to . . . the degree of injury in the future,' but '[t]hese opinions are a necessary part of the treatment of the patient [and] do not make the treating physicians experts as defined by Rule 26(b)(4)(c).'" (quoting DeRienzo v.

Metro. Transit Auth., No. 01-CV-8138, 2004 U.S. Dist. LEXIS 439, 2004 WL 67479, *2 (S.D.N.Y. Jan. 15, 2004) (alterations in original)). Accordingly, Defendants' motion to preclude the testimony of Dr. Wall is DENIED in part: Dr. Wall may only testify concerning observations, opinions, and prognoses made during the time he was treating Todaro; he is not permitted to offer his expert opinion on the amount of damages suffered.

### CONCLUSION

For the reasons discussed above, Defendants' motions in limine are GRANTED in part and DENIED in part.

SO ORDERED.

/S/ JOANNA SEYBERT

Joanna Seybert, U.S.D.J.

Dated:  Central Islip, New York
        August _1_, 2008

27